UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KELLEY VARNEY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:15-cv-00011-NT |
| ) | |
| DENISE RICHARDS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDED DECISION**

In this removed action, Plaintiffs Kelley Varney and Terry Varney seek to recover for, among other things, an alleged constitutional deprivation that occurred when Defendant Denise Richards physically restrained Plaintiffs' daughter during an incident on a school bus.

The matter is before the Court on Defendants' Motion to Dismiss (ECF No. 4).[1] As explained below, following a review of the pleadings, and after consideration of the parties' arguments, the recommendation is that the Court dismiss Plaintiffs' due process claims and remand the state law claims to the Maine Superior Court.

**Factual Background**

The facts set forth herein are derived from Plaintiffs' Complaint, which facts are deemed true when evaluating the Motion to Dismiss.[2] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

---

[1] The Court referred the Motion for report and recommended decision.

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

Plaintiffs Kelley and Terry Varney are the parents of R.V. (Complaint ¶ 1.) According to Plaintiffs, on October 29, 2012, when R.V. was seven years old and weighed approximately 45 pounds, she was bullied and intimidated by two boys who shared her seat on a public school bus of Regional School Unit (RSU) # 67. (*Id.* ¶ ¶ 6, 7.) The bus driver parked the bus and told the boys to leave her alone. Sometime after the bus ride resumed, the bullying escalated. R.V. yelled at the boys to leave her alone. (*Id.* ¶¶ 8 – 11.)

Defendant Denise Richards, an Education Technician, was riding on the bus in close proximity to R.V. (*Id.* ¶ 12.) "[A]fter R.V. responded to the escalated bullying Defendant Richards grabbed R.V. out of her seat and forcibly moved her to the seat directly across from where Ms. Richards had been sitting. Once there, Ms. Richards forcibly restrained, and physically and verbally assaulted R.V." (*Id.* ¶ 13.)

The bus was equipped with a security camera that recorded the incident. (*Id.* ¶ 14.) Plaintiffs "sought and received permission to view the … video." (*Id.* ¶ 15.) Plaintiffs allege that when they requested a copy of the video, Defendant (former) Superintendent Denise Hamlin told Ms. Varney, "You'll never see that tape. I'll bury it first." (*Id.* ¶¶ 16 – 17.) She also allegedly stated, "Not only will you never have a copy of that tape, you'll never see it again." [3] (*Id.* ¶ 17.)

RSU # 67 maintains a policy regarding the use of force to restrain a student. (*Id.* ¶ 18.) Pursuant to the policy, physical restraint is to be used "only as an emergency intervention when the behavior of a student presents an imminent risk of injury or harm to the student or others, and

---

[3] Based on Defendant Hamlin's alleged statement, Plaintiffs evidently viewed the video on at least one occasion. In their response to the Motion to Dismiss, Plaintiffs describe the incident in moderately different terms, stating that Defendant Richards "assaulted R.V., then pinned R.V.'s arms to her sides while wrapping R.V. up in an unwelcome embrace. Having attacked R.V. and rendered her helpless, Denise Richards proceeded to psychologically traumatize R.V." (Response, ECF No. 9, at 3.)

only after other less intrusive interventions have failed or been deemed inappropriate." (*Id.* ¶ 19.) Additionally, restraint is not to be applied merely for "staff convenience" or "to control challenging behavior." (*Id.* ¶ 20.) Plaintiffs contend that Defendant Richards's restraint of R.V. did not comply with the policy. (*Id.* ¶¶ 21-26.)

Plaintiffs allege that Defendant Richards deprived R.V. of her constitutional right "to be free from physical force while compelled to attend school." (*Id.* ¶ 28.) Additionally, Plaintiffs assert that Defendant Richards deprived them of their constitutional right "to raise their child without unwarranted interference from the State." (*Id.* ¶ 29.) Plaintiffs do not allege that R.V. suffered any physical injury. Instead, they allege that R.V. suffered "severe emotional distress." (*Id.* ¶ 30.)

Plaintiffs seek to recover under the federal civil rights statute, 42 U.S.C. § 1983, against Defendant Richards (Count I), and Defendant Hamlin (Count III).[4] In addition, Plaintiffs assert parallel claims against Defendants for violation of the Maine Civil Rights Act (Counts II and IV), as well as a claim of assault and battery (Count V), and several emotional distress claims (Counts VI – IX).

## Discussion

Defendants argue that Plaintiffs have failed to state a claim upon which relief may be granted and request dismissal of the case pursuant to Federal Rule of Civil Procedure 12(b)(6). (Motion to Dismiss, ECF No. 4.)

---

[4] Plaintiffs' claim against Defendant Hamlin is based on a failure to supervise and train. Current Superintendent Keith Laser appears to be included as a defendant simply because he is the current Superintendent of RSU # 67.

**A.  42 U.S.C. § 1983**

"Section 1983 establishes a civil cause of action for the deprivation of constitutional rights."  *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 87 (1st Cir. 2014).  To prevail on a § 1983 claim, a plaintiff must demonstrate that the alleged conduct was committed under color of state law, and that the conduct constitutes a denial of rights secured by the Constitution or laws of the United States.  *Id.*  To be liable on such a claim, an individual defendant's conduct must be causally connected to the alleged deprivation.  *Id.*

Section 1983 "is not itself a source of substantive rights," but rather provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 145 (1979).  Consequently, "the first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiffs argue that their allegations are sufficient to state a claim for the deprivation of rights secured by the Due Process Clause of the Fourteenth Amendment.[5]  According to Plaintiffs, their allegations implicate both procedural and substantive due process.  Defendants contend that Plaintiffs' allegations regarding the use of physical force to restrain a child do not state a constitutional claim in the absence of facts that would shock the conscience.

Plaintiffs evidently base their procedural due process claim on the alleged failure of Defendant Richards to comply with the RSU's policy on the use of physical force to restrain a

---

[5]  The Eighth Amendment prohibition against "cruel and unusual punishments" does not apply to school disciplinary matters.  *Ingraham v. Wright*, 430 U.S. 651, 671, 683 & n.40 (1977).

4

child.  Plaintiffs, however, cannot rely on the alleged violation of the policy to support a procedural due process claim.  The policy establishes a standard, not a procedure, and the Due Process Clause does not require administrative safeguards in the context of corporal punishment[6] in a school setting.  *Ingraham v. Wright*, 430 U.S. 651, 682 (1977) (involving use of a paddle pursuant to a school disciplinary policy).  *See also id.* at 682 n.55 ("The impracticability of [predeprivation procedure] is self-evident, and illustrates the hazards of ignoring the traditional solution of the common law.").  Plaintiffs, therefore, have not asserted a procedural due process claim upon which relief can be granted.[7]

The next question is whether Plaintiffs' allegations are sufficient to state a substantive due process claim against Defendant Richards.  The First Circuit has "recognized there may be substantive due process theories of recovery which turn on whether the alleged misconduct 'shocks the conscience.'"  *Marrero-Rodriguez v. Mun. of San Juan*, 677 F.3d 497, 501 (1st Cir. 2012) (citation and quotation marks omitted) (recognizing claim where supervisory police officer fatally shot plaintiff during training exercises while stating that he was demonstrating the proper way to

---

[6] Whether Plaintiffs' allegations actually describe "corporal punishment" is debatable.  However, viewing their allegations in the light most favorable to their cause, it is assumed for purposes of this Recommended Decision that their allegations fall into that category.

[7] Even if the policy could be construed as requiring some manner of predeprivation procedure, after *Ingraham* the Supreme Court explained that the negligent or intentional failure of a state officer to conform to state policy would amount to a random and unauthorized act, such that this Court would have to assess whether state law affords an adequate postdeprivation remedy.  *See San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 480-81 (1st Cir. 2012) (discussing the Supreme Court's *Parratt – Hudson* doctrine); *see also Zinermon v. Burch*, 494 U.S. 113, 115 (1990) (explaining that "in a situation where the State cannot predict and guard in advance against a deprivation, a postdeprivation tort remedy is all the process the State can be expected to provide, and is constitutionally sufficient.").  Because Plaintiffs' allegations do not concern procedural matters and because Plaintiffs' state law tort claims demonstrate that state law makes available adequate means of addressing the alleged harm, Plaintiffs fail to state a claim for the denial of procedural due process.

handle a subdued suspect). *See also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level"); *Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."); *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990) ("[B]efore a constitutional infringement occurs, state action must *in and of itself* be egregiously unacceptable, outrageous, or conscience-shocking."). The issue is thus whether as alleged by Plaintiffs, Defendant Richards's interaction with R.V. reasonably could be viewed as conscience-shocking.

Although the use of force in the context of student discipline would in certain circumstances likely support a substantive due process claim,[8] Plaintiffs' allegations simply do not describe the conscience-shocking conduct that is necessary to sustain a *constitutional* claim.[9] That is, while Plaintiffs arguably allege that Defendant Richards engaged in inappropriate conduct, Plaintiffs' complaint does not include factual allegations that fairly can be characterized as

---

[8] The First Circuit considered a substantive due process claim involving compelled attendance at a school sex education program in *Brown v. Hot, Sexy & Safer Productions, Inc.*, 68 F.3d 525, 529 (1st Cir. 1995). In that context, the Court cited with approval *Garcia v. Miera,* 817 F.2d 650 (10th Cir. 1987), for the proposition that "corporal punishment of students may 'shock the conscience' if it caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism ... that it amounted to a brutal and inhumane abuse of official power[.]" *Brown*, 68 F.3d at 529 (internal quotation marks omitted), *abrogated on other grounds by County of Sacramento v. Lewis,* 523 U.S. 833 (1998), *as stated in Martinez v. Cui*, 608 F.3d 54, 64 (1st Cir. 2010). The *Brown* Court did not rule out the possibility that verbal harassment could shock the conscience in an extreme case. *Id.* at 532. However, in this case, Plaintiffs' allegations do not describe the content of the words spoken by Defendant Richards.

[9] The Court declines to adopt Plaintiffs' suggestion that in assessing the existence of conscience-shocking behavior, the Court should evaluate "whether Denise Richards' assault on seven year old R.V. would 'shock the conscience' of a similarly situated seven year old." (Response at 6.)

egregious, outrageous, or conscience-shocking.[10] Plaintiffs, therefore, have not stated a substantive due process claim. In addition, because Plaintiffs have not asserted an actionable due process claim, Plaintiffs' related claims of failure to supervise and train also fail. [11] *Kennedy v. Town Of Billerica*, 617 F.3d 520, 531-32 (1st Cir. 2010) (explaining that municipal liability exists "only for underlying, identifiable constitutional violations attributable to official municipal policy" and that "the municipality's failure to train or supervise … only becomes a basis for liability when 'action pursuant to official municipal policy of some nature *caused a constitutional tort.*'") (emphasis in original) (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)).

## B. State Law Claims

Plaintiffs' state law claims are not within this Court's original jurisdiction. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995). Consistent with this principle, the state law claims would ordinarily be remanded to the Maine Superior Court. Defendants, however, argue that the Court's disposition of the § 1983 claims necessarily requires the same disposition of Plaintiffs' Maine Civil Rights Act claims. Plaintiffs contend that such a rule would "render the Maine Act meaningless," and they advocate

---

[10] The Supreme Court's affirmance of the dismissal of the case in *Ingraham*, which included a substantive due process theory, suggests that not even "excessive paddling" would shock the conscience for purposes of federal law. *See Ingraham*, 430 U.S. at 689 n.5 (White, J., dissenting).

[11] Plaintiffs' theory that their parental rights were infringed because "it would seem appropriate for school officials to contact parents and provide them with an opportunity to provide appropriate discipline" (Response at 8), merely proposes the kind of predeprivation process that the Supreme Court found unwarranted in *Ingraham*.

7

for a remand "for a determination whether there has been a violation of Plaintiffs' civil rights protected by the State." (Response at 8-9.)

The Law Court has "traditionally exercised great restraint when asked to interpret our state constitution to afford greater protections than those recognized under the federal constitution." *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, ¶ 13, 728 A.2d 127, 132 (quoting *State v. Buzzell*, 617 A.2d 1016, 1018 n.4 (Me. 1992)). Additionally, the Law Court has adopted the "shocks the conscience" standard for purposes of measuring the substantive due process guarantee of the Maine Constitution. *Norton v. Hall*, 2003 ME 118, ¶ 18, 834 A.2d 928, 934 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Plaintiffs' due process allegations, therefore, likely do not present a "substantial question of state law … best resolved in state court." *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998).

The Maine Civil Rights Act, however, authorizes suits against persons who, through "physical force," interfere "with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine *or laws of the State*." 5 M.R.S. § 4682(1-A) (emphasis supplied). Because Maine law contemplates an assessment of whether the use of force interferes with a right secured by the laws of the State, and not merely the Maine Constitution, the Maine Human Rights Act claim is appropriately remanded to state court for that assessment. *Patterson v. Nutter*, 78 Me. 509, 7 A. 273, 275 (1886) ("The correct rule holds the teacher liable if he inflicts a punishment which the general judgment of such men, after thought and reflection, would call clearly excessive.").

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court grant in part and deny in part Defendant's Motion to Dismiss (ECF No. 4). In particular, the recommendation is that the Court dismiss Plaintiffs' claims arising under 42 U.S.C. § 1983 (Counts I and III), and remand the state law claims to the Maine Superior Court.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of April, 2015.